IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD KASKEY | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| OSMOSE HOLDINGS, INC. and BILL | : | |
| BANHOLTZ and KEVIN LEAP | : | |
|     Defendants/Third Party Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| DONALD SHOVLIN | : | No. 13-4825 |
|     Third Party Defendant. | : | |

### MEMORANDUM

**Schiller, J.**                                                                                       **March 20, 2014**

      Plaintiff Richard Kaskey brought claims under the Fair Labor Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), and the Pennsylvania Wage Payment Collection Law ("WPCL") against his former employer, Osmose Holdings, and a number of his former supervisors.[1] Osmose Holdings, Bill Banholtz, and Kevin Leap (collectively "Osmose" or "Third Party Plaintiffs") filed an Amended Third Party Complaint against Donald Shovlin, also a former Osmose Holdings employee, which asserted that Shovlin is the proper defendant in Kaskey's lawsuit, and that Shovlin must indemnify Osmose if Osmose is found liable. Shovlin filed a motion to dismiss Osmose's Amended Third Party Complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants the motion to dismiss.

---

[1] Kaskey names Osmose Holdings, Inc., Bill Banholtz, Kevin Leap, and John Does 1-10 as Defendants. (Compl. ¶¶ 8-9.)

I.      FACTUAL BACKGROUND

Kaskey was employed by Osmose Holdings for various periods of time between January 2006 and June 2013. (Compl. ¶¶ 14-19.) He held the positions of crew member and working foreman, and he was paid an hourly wage during his time as foreman, which involved leading a crew to inspect and repair telephone poles. (*Id.* ¶¶ 14-22.)  As foreman, Kaskey was also responsible for a number of other tasks, including completing paperwork, mapping the crew's route, leading safety meetings, and conducting maintenance checks on the company vehicle. (*Id.* ¶¶ 23-24.) Kaskey asserts that he recorded the time he spent on these additional tasks on his personal payroll report, but that Defendants refused to compensate him for this time, instead compensating him only for time spent inspecting and repairing telephone poles. (*Id.* ¶¶ 25-26.) Kaskey also asserts that his supervisors instructed him to complete several other work-related tasks "off the clock." (*Id.* ¶ 27.) Kaskey brought claims under FLSA, the PMWA, and the WPCL against Osmose Holdings and a number of his supervisors, including Bill Banholtz and Kevin Leap, seeking damages, costs, and backpay.

Defendants/Third Party Plaintiffs Osmose Holdings, Bill Banholtz, and Kevin Leap ("Osmose") denied wrongdoing and filed an Amended Third Party Complaint against Shovlin. Shovlin was employed by Osmose Utilities Services, Inc. from January 2010 through July 2012. (Am. Third Party Compl. ¶ 10.) From May 2011 to March 2012, Shovlin was Kaskey's direct supervisor, and Osmose asserts that Shovlin is one of the "John Does" identified in Kaskey's Complaint.[2] (*Id.* ¶¶ 11-12.) Osmose claims that Shovlin was exclusively responsible for reporting the hours worked by Kaskey, and that Shovlin previously testified at an unnamed hearing or

---

[2] As Shovlin points out, it is "axiomatic that the plaintiff is the master of his own complaint," and Kaskey did not identify Shovlin as a defendant in his Complaint, though Shovlin's identity was known to Kaskey. (Third Party Def.'s Reply Br. at 3.) Osmose provides no support for its theory that Shovlin is a "John Doe" defendant. Thus, this assertion does not affect the Court's analysis.

proceeding that he intentionally under-reported Kaskey's working hours. (*Id.* ¶¶ 13-15.) Specifically, Osmose asserts that Shovlin's continued employment with Osmose Utilities Services was based on meeting a certain rate of productivity, and that Shovlin claimed that he falsified his team's time records in order to make it appear more productive, so that Shovlin could keep his job and earn a productivity bonus. (*Id.* ¶¶ 19-23.) However, Osmose disputes the accuracy of this prior testimony and "contend[s] that all time records were entered properly for Plaintiff." (*Id.* ¶ 17.)

In response, Shovlin filed a motion to dismiss the Amended Third Party Complaint, asserting that neither FLSA nor common law indemnification principles permit Osmose, as an employer, to seek contribution or indemnification from its own employee. Shovlin further asserts that he may not be held liable under FLSA because he does not meet the statute's definition of "employer."

## II.   STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers & Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). A court should accept the complaint's allegations as true, read those allegations in the light most favorable to the plaintiff, and determine whether a reasonable reading indicates that relief may be warranted. *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). "But a court need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v.*

*Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level. . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Simply reciting the elements will not suffice. *Id.*; *see also Phillips*, 515 F.3d at 231.

The Third Circuit Court of Appeals has directed district courts to conduct a two-part analysis when faced with a Rule 12(b)(6) motion. First, the legal elements and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Second, the court must make a commonsense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id.* at 211. If the court can infer only the mere possibility of misconduct, the complaint must be dismissed because it has alleged—but has failed to show—that the pleader is entitled to relief. *Id.*

When faced with a motion to dismiss for failure to state a claim, courts may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004).

**III.   DISCUSSION**

Osmose's Amended Third Party Complaint against Shovlin contains two counts. Count II, titled "Common Law Indemnification," asserts: "To the extent that Third-Party Plaintiffs are liable to Plaintiff for any damages, which liability Third-Party Plaintiffs deny, Third-Party Defendant is liable over to Third-Party Plaintiffs for any and all such damages for indemnification and contribution." (Am. Third Party Compl. ¶ 31.) The legal theory on which Count II is based is not evident from the Amended Third Party Complaint. Specifically, it is unclear whether Osmose believes that Shovlin has a common law duty to indemnify Osmose for the FLSA claim previously mentioned in the Amended Third Party Complaint, or whether Osmose believes that Shovlin has a common law duty to indemnify Osmose for the two Pennsylvania state law claims that were listed in Kaskey's Complaint but were not mentioned in Osmose's Amended Third Party Complaint. Indeed, Shovlin did not address indemnification for the state law claims in his motion to dismiss. In his reply brief, he explains that this was because "the vagueness of Defendant's complaint made it unclear that Defendant was seeking contribution/indemnification for violations of state law[.]" (Third Party Def.'s Reply Br. at 4.) The Court agrees with Shovlin, but as the issues are now fully briefed, the Court will address the broader argument, that Shovlin owes a common law duty to indemnify Osmose for Kaskey's PMWA and WPCL claims.

Count I of the Amended Third Party Complaint, titled "Fair Labor Standards Act," asserts that Shovlin is responsible for causing any harm suffered by Kaskey, and that Shovlin should indemnify Osmose for its alleged FLSA violations. Osmose argues that Shovlin qualifies as an "employer" under FLSA, that FLSA allows one employer sued under the law to seek indemnity or contribution from another employer by filing a third party complaint, and that

Pennsylvania common law requires Shovlin to indemnify Osmose for any liability under FLSA. (Mem. in Opp'n to Third Party Def.'s Mot. to Dismiss Am. Third Party Compl. 4-10.) Shovlin contends that FLSA does not explicitly or impliedly allow for an employer to seek indemnity or contribution from a third party, regardless of whether that person is an employer. He also argues that FLSA's carefully crafted remedial scheme intentionally omits a right of action for indemnity and contribution and preempts conflicting state law that would allow these actions. Finally, Shovlin asserts that he does not qualify as an "employer" under FLSA, which relieves him of any possible liability to Kaskey, or to Osmose for indemnity or contribution.

### A. State Law Claims

#### 1. Definition of employer: FLSA and PMWA claims

FLSA regulates many aspects of the relationship between employers and employees, including regulating overtime and wage rates. 29 U.S.C. § 201 et seq. Similarly, the Pennsylvania Minimum Wage Act seeks to protect some employees from "evils of unreasonable and unfair wages" paid by some employers in Pennsylvania. 43 Pa. Const. Stat. § 333.101. FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). An "employer" within the meaning of the PMWA "includes any individual, partnership, association, corporation, business trust, or any person or group of persons acting, directly or indirectly, in the interest of an employer in relation to any employee." 43 Pa. Const. Stat. § 333.103(g). Courts have interpreted the "practically identical" language of the two statutes to have the same meaning. *Scholly v. JMK Plastering, Inc.*, Civ. A. No. 07-4998, 2008 WL 2579729, at *4 (E.D. Pa. June 25, 2008); *see also Schneider v. IT Factor Prods.*, Civ. A. No. 13-5970, 2013 WL 6476555, at *3 (E.D. Pa. Dec. 10, 2013).

Thus, the following analysis of whether Shovlin is an "employer" applies to Osmose's claims for indemnity or contribution under FLSA and the PMWA.

To determine whether an employee's supervisor qualifies as his employer under FLSA, the Third Circuit employs the "economic reality" test. *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 417-18 (3d Cir. 2012) ("In analyzing an individual supervisor's control over the employee . . . most courts look to the "economic reality" of the employment situation, examining whether the individual supervisor carried out the functions of an employer with respect to the employee."). Courts conducting this inquiry must examine the totality of the circumstances, and courts in this circuit employ four non-exhaustive factors to assist in the determination: "whether the individual (1) had the power to hire and fire the employee, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)) (internal quotation marks and modifications omitted).

Osmose has not plausibly pled that Shovlin was Kaskey's employer. The Amended Third Party Complaint asserts only that Shovlin "acted as Plaintiff Richard Kaskey's direct superior" and that he "was solely and exclusively responsible for entering time for Plaintiff." (Am. Third Party Compl. ¶¶ 11, 13.) There is no suggestion that Shovlin had the power to hire or fire Kaskey, determined the rate or method of Kaskey's payment, or maintained employment records regarding Kaskey. *Compare Perez v. Davis Design & Dev., Inc.*, Civ. A. No. 13-1118, 2013 WL 6835095, at *5 (W.D. Pa. Dec. 23, 2013) (declining to dismiss a FLSA claim against the company CEO who "undoubtedly had the power to hire and fire employees, supervise employees, and supervise the maintaining of adequate employment records"); *Schneider*, 2013

7

WL 6476555, at *4 (declining to dismiss a FLSA claim against the president and CEO of a company who allegedly maintained operational control over the business, including employee supervision). Additionally, Shovlin's alleged ability to "enter time" for Kaskey does not suggest that Shovlin controlled Kaskey's work schedule or the conditions of his employment. *Accord Freeman v. Philadelphia Hous. Auth.*, Civ. A. No. 12-1422, 2012 WL 3235323 (E.D. Pa. Aug. 8, 2012) (finding that the defendant company's general counsel was not an "employer" within the meaning of the FMLA because the complaint did not "discuss [Defendant's] role in the company and authority over Plaintiff's employment, including whether [Defendant] actually had the power to hire and fire, control wages and work conditions"). Thus, all four *Haybarger* factors suggest that Shovlin was not Kaskey's employer. Though the Court must determine the economic reality of their relationship based on the totality of the circumstances, the additional facts asserted by Osmose—that Shovlin intentionally misrepresented the hours Kaskey worked in order to earn larger bonuses—do not suggest that Shovlin was anything other than Kaskey's supervisor. *See Soles v. Zartman Const., Inc.*, Civ. A. No. 13-29, 2013 WL 1207818 (M.D. Pa. Mar. 8, 2013) *report and recommendation adopted*, Civ. A. No. 13-29, 2013 WL 1207737 (M.D. Pa. Mar. 25, 2013) (dismissing a FLSA claim against a third party defendant when the third party plaintiff merely alleged that the he "directly or indirectly, directed, aided, abetted, and/ or assisted with executing policies and practices of Defendant . . . which resulted in Defendants allegedly failing to pay Named Plaintiff and Plaintiffs proper compensation pursuant to the FLSA"). As this analysis applies to both the FLSA and PMWA claim, the Court finds that Shovlin was not Kaskey's "employer" for the purposes of either statute.

### 2. *Definition of employer: WPCL claim*

"The Wage Payment and Collection Law provides employees a statutory remedy to recover wages and other benefits that are contractually due to them." *Oberneder v. Link Computer Corp.*, 548 Pa. 201, 204 (1997); *see also Schneider*, 2013 WL 6476555, at *5 (noting that the WPCL "requires employers to pay a separated employee his or her 'wages or compensation earned' at the time of separation no later than the employer's next regular payday") (citing 43 Pa. Cons. Stat. § 260.5). The law defines an "employer" as "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 Pa. Cons. Stat. § 260.2a. In order for an individual to be held personally liable as an "employer" under the WPCL, that person must be a corporate officer who played "an active role in [corporate] decision making." *Mohney v. McClure*, 390 Pa. Super. 338, 345 (1990), *aff'd*, 529 Pa. 430 (1992); *see also Carpenters Health & Welfare Fund of Phila. & Vicinity by Gray v. Kenneth R. Ambrose, Inc.*, 727 F.2d 279, 282-83 (3d Cir. 1983) ("[I]t is questionable whether the WPCL has so broad a scope that it imposes personal liability on those lower level corporate officers or employees who are merely implementing a policy at the command of their superiors[.]").

Osmose has not pled that Shovlin was a corporate officer who exercised policy-making or decision-making authority over Osmose Holdings. As noted above, the Amended Third Party Complaint identifies Shovlin as Kaskey's supervisor and an employee of Osmose Utilities Services, Inc. (Am. Third Party Compl. ¶¶ 10, 11.) Osmose also asserts that Shovlin was "aware of Osmose's rules and policies concerning time records, and compensable time," but not that he had any role in promulgating those policies. (*Id.* ¶ 14.) Thus, as Osmose has not pled that

9

Shovlin was a corporate officer with authority over Osmose Holdings, Shovlin cannot be considered an "employer" within the meaning of the WPCL.

### 3.     Contribution or indemnification for Kaskey's state law claims

As noted above, Osmose argues that Count II of its Amended Third Party Complaint, titled "Common Law Indemnification," sought indemnity from Shovlin for Kaskey's PMWA and WPCL claims. Shovlin argues that basic common law principles regarding contribution and indemnification bar Osmose from bringing such claims against Shovlin, and he contends that the PMWA and WPCL do not allow third party rights of action for contribution or indemnity. Without reaching Shovlin's second argument, the Court agrees that Shovlin cannot be directed to indemnify Osmose for Osmose's violation of the state statutes because Shovlin, as a non-employer, cannot be held directly liable under those statutes.

"[A] third-party action is proper only when a right to relief exists under the applicable substantive law." *Foulke v. Dugan*, 212 F.R.D. 265, 269-70 (E.D. Pa. 2002). Common law indemnity or contribution among joint tortfeasors exists only when both parties are liable to a third party. Restatement 2d Torts § 866B ("If two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability."); *see also Builders Supply Co. v. McCabe*, 366 Pa. 322, 328, (1951). Additionally, "[t]he right of indemnity . . . arises solely by explicit contractual agreement, or some other legal obligation." *Foulke*, 212 F.R.D. at 270.  As discussed at length above, only employers may be held liable under the PMWA and the WPCL. This Court has already found that Shovlin is not an "employer" under either statute. Thus, because Shovlin cannot be held principally liable under the statutes, he cannot be held liable in indemnity or contribution to Osmose for Osmose's

alleged violations of those statutes.. Furthermore, Osmose has not pled that a contractual relationship existed between Osmose and Shovlin that requires Shovlin to indemnify Osmose. The Court will dismiss Count II of the Amended Third Party Complaint on these grounds.

### B. Contribution and Indemnity under FLSA

Shovlin argues, and this Court agrees, that Osmose's claim for indemnity or contribution against Shovlin for Kaskey's FLSA claim must be dismissed. Osmose appears to argue that a third party right of action is implicit in FLSA, or alternatively that state law creates an avenue for Osmose to seek indemnity and contribution for Kaskey's FLSA claim. However, FLSA does not explicitly or impliedly permit third party rights of action, and it preempts parties' attempts to bring state law causes of action seeking contribution and indemnity for FLSA claims.

In *Northwest Airlines, Inc. v. Transportation Workers Union of America*, *AFL-CIO*, the Supreme Court decided the question of "whether an employer held liable to its female employees . . . [under] the Equal Pay Act of 1963 and Title VII of the Civil Rights Act of 1964 has a federal statutory or common-law right to contribution from unions that allegedly bear at least partial responsibility for the statutory violations." 451 U.S. 77, 79-80 (1981). Those statutes, like FLSA, did not explicitly provide for a third party right of action for indemnity or contribution. The Court held that, even assuming that the union was actually responsible for the statutory violations, the statutes did not permit the liable employer to seek contribution or indemnity from the union. *Id.* In so holding, the Court noted that, "[i]n determining whether a federal statute that does not expressly provide for a particular private right of action nonetheless implicitly created that right, [its] task is one of statutory construction." *Id.* at 91. The considerations weighed by the *Northwest Airlines* Court in interpreting the statutes have been examined by lower courts conducting similar inquiries.

11

Though the Third Circuit has not addressed the question of whether FLSA permits an action for contribution or indemnity, other circuit courts have held that no such right of action exists. For example, the Second Circuit relied on *Northwest Airlines* in deciding that employers could not bring third party actions for indemnity or contribution against co-employers.[3] *See Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 143-44 (2d Cir. 1999). *Herman* is procedurally and factually similar to the case before this Court: a claim was brought under FLSA against an employer, and that employer filed a third party complaint against co-employers seeking indemnity or contribution. The Second Circuit held that there was no implied cause of action for indemnity or contribution in FLSA, noting that all four considerations highlighted in *Northwest Airlines* counseled against such a finding:

> First, the text of the FLSA makes no provision for contribution or indemnification. Second, the statute was designed to regulate the conduct of employers for the benefit of employees, and it cannot therefore be said that employers are members of the class for whose benefit the FLSA was enacted. Third, the FLSA has a comprehensive remedial scheme as shown by the "express provision for private enforcement in certain carefully defined circumstances." Such a comprehensive statute strongly counsels against judicially engrafting additional remedies. Fourth, the Act's legislative history is silent on a right to contribution or indemnification.

*Herman*, 172 F.3d at 143-44 (internal citation omitted). The *Northwest Airlines* factors, as applied to the facts in this case, yield the same result. This Court declines to imply a right to contribution or indemnity from the FLSA statute.

This Court also concludes that state law indemnity or contribution causes of action for FLSA violations are preempted because "FLSA's remedial scheme is sufficiently comprehensive

---

[3] This Court believes that the Third Circuit would also apply the logic outlined in *Northwest Airlines* to this question. One of the statutes at issue in *Northwest Airlines,* the Equal Pay Act, is an amendment to FLSA. *Id.* at 99 n.1. Additionally, the Third Circuit has applied the *Northwest Airlines* analysis to the Americans with Disabilities Act (ADA), which has similar remedial purposes to FLSA. *See Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 425-26 (3d Cir. 2003).

as to preempt state law in this respect." *Id.* at 144. This Court is persuaded by the logic of the Second Circuit in *Herman*, and by the similar reasoning of the three circuit courts that have addressed this issue. *See Lyle v. Food Lion, Inc.*, 954 F.2d 984 (4th Cir. 1992); *Martin v. Gingerbread House, Inc.*, 977 F.2d 1405, 1408 (10th Cir. 1992) ("We . . . hold that a third party complaint by an employer seeking indemnity from an employee is preempted."); *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1264 (5th Cir. 1986) ("To engraft an indemnity action upon this otherwise comprehensive federal statute would run afoul of the Supremacy Clause of the Constitution."). Thus, there is no implied federal or state-created right for an employer sued under FLSA to seek indemnity or contribution from a third party.

The clear weight of authority rests with Shovlin on this issue, and the case cited by Osmose in opposition is unpersuasive. *See Deeley v. Genesis Healthcare Corp.*, Civ. A. No. 10-1242, 2011 WL 3240828, at *5 (E.D. Pa. July 29, 2011). The issue in that case was whether the plaintiff could dismiss claims against one of her employers, whom she had named in a previous iteration of her complaint. *Deeley* suggests in dicta that an employer may seek contribution under FLSA from a co-employer, but the court did not analyze this ancillary issue. Additionally, the *Deeley* dicta referred to the rights of two co-employers, and this Court has established that Shovlin was not one of Kaskey's employers. Thus, because employers found liable under FLSA have no right contribution or indemnity from a third party, the Court will dismiss Count I of Osmose's Amended Third Party Complaint against Shovlin.[4]

---

[4] Osmose argues that Defendants/Third Party Plaintiffs Bill Banholtz and Kevin Leap, who are "employees/supervisors of Osmose" and "named as defendant[s]/ supervisor[s] under FLSA" "indisputably" have claims against Shovlin. (Mem. in Opp'n to Third Party Def.'s Mot. to Dismiss Am. Third Party Compl. 4.) This assertion seems to stem from the assumption that the three parties—Banholtz, Leap, and Shovlin—are in the same legal position. (*Id.* at 4-5.) However, Shovlin has filed a motion to dismiss, and the Court finds that he is not an "employer"

## IV.     CONCLUSION

As FLSA does not permit employers to seek indemnity or contribution from third parties, Osmose may not seek contribution or indemnity from Shovlin for its alleged FLSA violations. Additionally, as Shovlin is not an employer within the meaning of the PMWL or the WPCL, Osmose cannot maintain its indemnity or contribution claims against Shovlin for Osmose's alleged violations of those laws. Shovlin's motion to dismiss the Amended Third Party Complaint is granted. An Order consistent with this Memorandum will be docketed separately.

---

within the meaning of FLSA, the PMWA, or the PWPCL. Banholtz and Leap have not filed such a motion at this stage.